BEFORE THE FIRST DIVISION, OCTOBER 25, 1960

No. 64769.—Laco Trading Co. *v.* United States, protest 58/7990 (Los Angeles).

OLIVER, Chief Judge: This protest relates to certain merchandise, described on the invoice as " 'OPLEN' Viewers model II" and assessed with duty at the rate of 45 per centum ad valorem under paragraph 228(b) of the Tariff Act of 1930, as optical instruments, not specially provided for. Plaintiff claims that the merchandise is properly classifiable under the provision for microscopes, not specially provided for, valued under $25 each, in paragraph 228(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, carrying a dutiable rate of only 25 per centum ad valorem. Although the protest also contains a claim for classification of the merchandise under paragraph 353, as modified, as articles having as an essential feature on electrical element or device, plaintiff, in its brief, states that this claim "is not relied on herein." Therefore, no further reference will be made thereto.

That microscopes are optical instruments, is well settled. *United States* v. *Bliss & Co. et al.*, 6 Ct. Cust. Appls. 433, T.D. 35980. Thus, the sole issue herein is whether the article in question is a microscope. If so, it is properly classifiable under the *eo nomine* provision for such merchandise, as claimed by plaintiff; otherwise, the collector's classification must be sustained.

There is no dispute concerning the facts. The evidence adduced by both parties will support the following summation.

The merchandise in question is a familiar item of photographic equipment. It is a viewer—bought and sold as such— that is designed, and exclusively used, for viewing color photographs fitted in a cardboard frame, the overall dimensions of which are 2 inches by 2 inches. Examination of the sample photograph slide in evidence (plaintiff's exhibit 3) shows that the color transparency is 1½ inches long by 1 inch wide, and that it is securely fitted into a cardboard frame, 2 inches square. Essential to the functioning of the viewer in question are the optical component and an electrical system, which are enclosed in a conveniently shaped housing. The optical component consists of two lenses of 2-power magnification, whose sole purpose is to enlarge or magnify the color photograph on the slide being viewed. The electrical system includes two contacts, an upper and a lower, that go to a small electric bulb, which is fitted behind a translucent plastic substance, measuring 1½ inches by 1¼ inches, that spreads "the light evenly throughout the viewing surface" (R. 11) and serves as a background for the photographic slide being viewed. A switch, fitted to the base of the frame plate, activates the electrical energy supplied by two small batteries to light the electric bulb. The viewer in question functions by inserting a 2-inch by 2-inch slide in the slot at the top and exerting light finger pressure, causing the slide to press down on the "top contact which makes connection with the contact on the bottom which short-circuits the battery energy through the bulb, which produces the electricity." (R. 11.) The electrical system is essential to supply a source of light in the housing so the optical component can be useful in showing the slide.

No question of commercial designation is involved herein. Hence, the common meaning of the word "microscope" is a proper subject for discussion. Accordingly, definitions from recognized authorities are quoted as follows.

Knight's American Mechanical Dictionary defines "microscope" as "An optical instrument by which objects too small to be viewed by the naked eye may be seen and examined."

In Funk & Wagnalls New Standard Dictionary, "microscope" is defined as "An instrument for assisting the eye in the vision of minute objects or features of objects that would be invisible without such aid."

Discussion of the term "microscope" in the Encyclopaedia Britannica includes the following:

MICROSCOPE, an optical instrument for examining small objects or the fine detail or structure of objects (Gr. * * * small * * * to view) ; it acts in such a way that in the eye a clearly focussed image is formed which is larger than the unaided eye could produce. * * *

Webster's New International Dictionary defines "microscope" as "An optical instrument, consisting of a lens, or combination of lenses, for making enlarged or magnified images of minute objects."

All of the foregoing definitions emphasize the basic design of a microscope as an instrument which serves to aid the naked eye in *the examination of minute objects*, a function that connotes general usage in different kinds of work that may include industrial as well as scientific branches of research. The merchandise in question is not such an instrument. On the contrary, the viewer under consideration is a device that is made for the extremely limited purpose of viewing color photographs in slides, 2 inches square, that fit the slot in the viewer. By design, construction, and function, this viewer is not comparable with a microscope, as such an instrument is described in Van Nostrand's Scientific Encyclopedia as follows :

MICROSCOPE. The optical instrument that bears this name consists essentially of two parts. 1. The objective is a lens combination, usually of small aperture and short focal length, which forms a real, inverted, and much enlarged

image of the object at a point high up in the microscope tube, very much as a stereopticon objective throws an enlarged picture upon a distant screen. The objective-lens system is composed of several positive lenses, the first of which is hemispherical with its plane surface facing the object. Following this is a larger convexo-concave or "meniscus" lens, and then two still larger plano-convex achromatic lenses. 2. The **eyepiece** or ocular is placed beyond, with its focal plane coinciding with this image, and acts as a collimator, so that one looking into it sees a virtual image, apparently at an infinite distance, and subtending a wide angle. The instrument is focused by varying the distance between objective and object. The **magnifying power** of the microscope depends upon the relative focal length of objective and eyepiece; its resolving power depends upon the dominant wavelength of the light used * * *.

The viewer in question, that uses only two lenses of "approximately two power magnification" (R. 12) and which needs no focusing in its exclusive use of showing color photographs to be viewed, is not, in the light of the definitions and descriptions, hereinabove set forth, to be placed in the same category as the instrument commonly known as a microscope.

That the viewer under consideration employs, to some degree in its usefulness, the principle of magnification, is not controlling of the tariff classification of this merchandise. In *United States* v. *Loffredo Bros. et al.*, 46 C.C.P.A. (Customs) 63, C.A.D. 697, and *International Forwarding Co.* v. *United States*, 53 Treas. Dec. 981, Abstract 5788, which involved novelty items, simulating binoculars and opera glasses that magnified pictures and printed matter mounted on lenses in the articles, the merchandise was held to be properly classifiable as optical instruments. In *R. J. Saunders & Co., Inc.* v. *United States*, 45 C.C.P.A. (Customs) 87, C.A.D. 678, an electron microscope, used to examine minute organic and inorganic materials in laboratories in industry, chemistry, metallurgy, biology, and similar fields, was held to be classifiable as a laboratory instrument. The three cited cases support the proposition that the mere possession of magnifying properties in a certain commodity will not establish classification of the merchandise as a microscope, to the exclusion of all other considerations. In this case, the viewer under consideration, by the combined application of the principles of optics and magnification, shows, exclusively for viewing purposes, enlarged color photographs. Looking at color transparencies with the use of the article under discussion, is not an examination of minute objects, within the definitions of the word "microscope," previously referred to herein. In a word, this viewer is not a microscope.

Counsel for plaintiff, in their brief, cite *Sussfeld, Lorsch & Co.* v. *United States*, 30 Treas. Dec. 265, T.D. 36174. That case arose under the Tariff Act of 1913 and related to certain magnifying glasses that were "used for the examination of minerals or botanical objects or for magnifying printed matter." The merchandise was held to be classifiable as microscopes upon a finding that the magnifying glasses involved therein conformed to the common meaning of the word "microscope." The same is not true with respect to the present merchandise. The viewer involved herein is not used for the examination or magnification of any minute objects. Instead, it simply makes easier to see, than would be discernible by the naked eye, color transparencies that are inserted in the device for viewing. The cited case is distinguishable from the present one.

Consideration has been given to all of the cases and other references mentioned in the briefs of counsel for the respective parties and *amicus curiae*. The discussion herein has referred only to those judicial and lexicographic authorities deemed necessary to support the reasoning followed and the conclusion reached.

On the basis of the record before us and for all of the reasons hereinabove set forth, we hold the viewer in question to be properly classifiable under the

provisions for optical instruments in paragraph 228(b), *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.